Rivera de Martínez, Juez Ponente
*768 TEXTO COMPLETO DE LA SENTENCIA
El recurso de epígrafe fue presentado el 27 de junio de 1997. La parte apelante solicita que revisemos una sentencia emitida por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Lares, el 28 de enero de 1997 y notificada el mismo día. Los apelantes solicitaron determinaciones de hechos el 6 de febrero de 1997 siendo declarada dicha solicitud NO HA LUGAR el 11 de febrero de 1997 y notificada en la misma fecha a las partes.
Inconforme, los apelantes recurrieron ante este Foro mediante un recurso de apelación presentado el 10 de marzo de 1997, el cual fue denegado por no haberse cumplido con los términos dispuestos por las disposiciones legales vigentes.
A tales efectos, emitimos Resolución el 19 de mayo de 1997, notificada el 28 de mayo de 1997. Allí resolvimos, que el dictamen judicial del Tribunal de Primera Instancia era en realidad una resolución interlocutoria y no una sentencia parcial final dictada sobre una de las acciones incoadas. Por ello, nada impedía que dicha parte reprodujera nuevamente los señalamientos de error, una vez se dictara la sentencia final quedando adjudicadas la totalidad de las controversias.
El 17 de junio de 1997, notificada el 18 de junio del mismo año, el Tribunal de Primera Instancia emitió Sentencia Nunc Pro Tunc, declarando NO HA LUGAR la reconvención interpuesta y haciendo constar que se hacían formar parte de la sentencia, las determinaciones de hechos, conclusiones de derecho y sentencia de fecha 28 de enero de 1997.
El 27 de junio de 1997, los apelantes presentaron el recurso de apelación ante nuestra considera-ción. Reprodujeron los mismos planteamientos y alegaron los mismos errores que habían señalado en la apelación anterior.
Para una mejor comprensión de la controversia ante nos, a continuación expondremos un breve resumen de los hechos, según surgen del expediente.
I
Los demandantes, aquí apelados, Miguel A. Torres Méndez, su esposa, Feliza Jiménez Jiménez y la Sociedad Legal de Gananciales compuesta por ambos, presentaron el 12 de julio de 1995, una acción civil sobre incumplimiento de contrato y cobro de dinero, en contra de los demandados, aquí apelantes, Heriberto Otaño Cuevas, su esposa, Rosa I. López Irizarry, y la Sociedad Legal de Gananciales compuesta por dicho matrimonio. La parte demandante-apelada alegó que el 21 de noviembre de 1987, otorgó un contrato con la parte demandada-apelante, mediante el cual estos últimos reconocieron una deuda por la suma de diecisiete mil quinientos setenta y cinco dólares con setenta y tres centavos ($17,575.73), preexistente, en donde ellos figuraban como los deudores y la parte demandante-apelada, como los acreedores. Dicha deuda alegadamente surgió por motivo de una mercancía que la parte aquí apelada le vendió en un momento dado a la parte aquí apelante y la cual supuestamente nunca fue satisfecha en su totalidad.
Mediante el contrato antes aludido, la parte demandada-apelante, convino con los demandantes-apelados y con Borínquen Dairy de Aguadilla, reconocer la deuda antes mencionada. Acordó, además, ceder y traspasar solidariamente la suma de cien ($100) dólares semanales a la parte demandante-apelada, de aquella cantidad de dinero que era acreedor ante Borínquen Dairy por concepto de la venta de leche que, dentro de una relación de negocios regular y ordinaria, le estaba haciendo a esa pasteu-rizadora de su negocio de vaquería. Tal cesión fue pactada para entrar en vigor desde el 10 de diciem-bre de 1987, hasta el saldo toal de la deuda de diecisiete mil quinientos setenta y cinco dólares con se-tenta y tres centavos ($17,575.73). La obligación de Borínquen Dairy quedó supeditada a que en ningún caso remitiría pagos a la parte demandante, aquí apelada, que excedieren aquellos pagaderos a *769 la demandada-apelante. 
Borínquen Diary pagó a la parte demandante-apelada la suma de cinco mil cuatrocientos ($5,400) dólares del producto de la venta de leche que le realizaran a dicha empresa los demandados-apelantes, quedando un balance pendiente de pago por la suma de doce mil ciento setenta y cinco dólares con setenta y tres centavos ($12,175.73).
La parte demandada-apelante presentó, con fecha del 29 de septiembre de 1995, contestación a la demanda y reconvención. Levantó como defensa afirmativa la prescripción de la acción incoada, entre otras. En la reconvención interpuso una acción de daños y perjuicios por el alegado acto intencional de desprestigiar su negocio. El 10 de abril de 1996, solicitó la desestimación de la demanda y/o sentencia sumaria, por alegadamente estar prescrita la acción de la parte demandante-apelada. El 28 de mayo de 1996, el Tribunal de Primera Instancia emitió resolución declarando sin lugar tal solicitud.
Durante la vista en su fondo del caso de autos, las partes llegaron a los siguientes acuerdos:

"1. Se estipuló el contrato entre las partes, firmado el 21 de noviembre de 1987.

2. Que la demanda de cobro se radicó el 12 de julio de 1995.

3. Que no se incluyó a Borínquen Dairy en la demanda.

4.Que el demandante le hizo gestiones de cobro al demandado, pero no fueron por escrito, aunque luego el Ledo. Arce le hizo gestiones de cobro por escrito, certificadas con acuse de recibo, treinta (30) días antes de la radicación de la demanda.

5. Se estipuló que de declarar el demandante, la deuda al día de hoy sería de $12,175.73.

6. Que de declarar el demandado, éste declararía que le pagó la totalidad de la deuda a la parte demandante, pero que no tenía prueba documental para acreditar ese hecho.

7. Que el demandante declararía que la deuda original era de $17,573.73 y que Borínquen Dairy pagó la suma de $5,400.00, desde el 10 de diciembre de 1987 al 18 de enero de 1989, que fue el último pago."
Sólo desfiló como prueba oral el testimonio del señor Miguel Torres Méndez, co-demandante, aquí apelado, en cuanto a cuándo y porqué Borínquen Dairy había dejado de pagarle a la parte aquí apelada los pagos pactados en el contrato. El Tribunal de Primera Instancia concluyó, como cuestión de hecho, que Borínquen Dairy dejó de pagarle la suma de cien ($100) dólares semanales a la parte demandante-apelada cuando la parte demandada-apelante, vendió su vaquería y, por ende, cesó de venderle leche a Borínquen Dairy. Concluyó, además, que tal pago semanal dependía exclusivamente de que la parte demandada-apelante, vendiere su cuota de leche a Borínquen Dairy. De no existir la venta de leche por la parte demandada-apelante a dicha empresa, ésta no tenía obligación de pagar suma alguna.
El 28 de enero de 1997, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la demanda, condenando a la parte demandada-apelante a pagar a la parte demandante-apelada la suma de doce mil ciento setenta y cinco dólares con setenta y tres centavos ($12,175.73) más las costas, gastos y mil doscientos ($1,200) dólares por concepto de honorarios de abogado. Este dictamen judicial no dispuso nada sobre la reconvención, según expresáramos anteriormente.
Luego de los incidentes a los cuales nos hemos referido en lo que concierne al recurso de apelación anterior, que fue denegado por este Tribunal, el apelante recurre mediante el presente recurso, planteando los mismos errores, a saber:

"1. Erró el Honorable Tribunal de Primera Instancia al estimar que Borínquen Dairy no era parte indispensable en el pleito y, por lo tanto, no tenía que comparecer.

*770
2. Erró el Honorable Tribunal de Primera Instancia al no desestimar el caso por prescripción, a pesar de serle notificado en dos ocasiones, una por moción de desestimación, la cual fue declarada No Ha Lugar y otra al terminarse el proceso."

El 29 de julio de 1997, la parte apelada presentó su oposición al recurso, por lo cual teniendo el beneficio de la posición de ambas partes, estamos en condiciones de resolver. Veamos:
II
En lo que se refiere al primer error, debemos examinar las disposiciones de la Regla 16.1 de las de Procedimiento Civil en cuanto a la acumulación indispensable de partes. La misma preceptúa:

"16.1 Acumulación indispensable

Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."

En cuanto al alcance de la disposición transcrita, se ha resuelto por nuestro Tribunal Supremo, que la frase que alude al hecho de que una parte indispensable es aquella "sin cuya presencia no pueda adjudicarse la controversia", se refiere a la persona o entidad que debería hacerse parte en el pleito para no afectar su interés en el mismo; más dicho interés afectado tiene que ser de índole real e inmediata, al extremo de impedir la preparación de un decreto judicial adecuado. Hernández Agosto v. López Nieves. 
 El mismo caso dispone, que la frase "interés común" no se refiere a cualquier interés en el pleito, sino a un interés de tal orden que impida la preparación de un decreto judicial sin afectarlo."

En el caso de autos, la Borínquen Dairy meramente recibió una autorización, en virtud del convenio entre los apelantes y los apelados, para que de los ingresos que por razón de la producción de leche pertenecían a la parte apelante, enviara a los apelados la suma de cien ($100) dólares semanales y que este pago fuera abonado a la deuda existente entre los apelantes y los apelados. La deuda había sido plenamente reconocida por los apelantes. La Borínquen Dairy continuaría remesando dicha cantidad semanalmente a los apelados, siempre que los apelantes continuasen vendiéndole su cuota de leche, lo cual una vez dejó de hacerse, trajo como resultado que fueran descontinuados los pagos. Esta situación estaba contemplada en el contrato entre la parte apelante y la apelada, y conforme al mismo contrato, la Borínquen Dairy jamás asumió deuda alguna.
Ante las circunstancias reseñadas, evidentemente, Borínquen Dairy no era parte indispensable en el pleito, ya que claramente podía adjudicarse la controversia entre los apelantes y los apelados, como lo hizo el Tribunal de Primera Instancia, sin la presencia de esta entidad. El error señalado, no se cometió.
El segundo error plantea que se debió haber desestimado la acción por haber prescrito la misma a tenor de los Artículos 1830, 1861 y 1866 de nuestro Código Civil. El Artículo 1830 dispone lo siguiente:

"Por la prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales.

También se extinguen del propio modo por la prescripción los derechos y las acciones de cualquier clase que sean."

Sobre la prescripción, se ha sostenido que existen dos especies, la adquisitiva y la extintiva, pero ambas tienen como propósito castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico. La diferencia esencial entre una y otra es que la adquisitiva exige la posesión como un hecho positivo, mientras que la extintiva requiere la inacción del titular del derecho. Tanto una como la otra poseen, como elementos comunes, el factor del tiempo, el concurso de un cierto plazo, y tienen como finalidad la certidumbre y firmeza de la vida jurídica. Silva Wiscovich v. Weber Dental Mfg. Co. 
*771 El Artículo 1861 del Código Civil, supra, dispone que las acciones prescriben por el mero lapso del tiempo fijado por la ley. Respecto a ello, se ha interpretado, que en Puerto Rico, las reglas que rigen la prescripción de acciones forman parte del derecho sustantivo y no del derecho procesal. Rodríguez Narváez v. Nazario. 
Conforme a lo anterior, el apelante interpreta que el Artículo 1866 del Código Civil, supra, es aplicable al caso de autos. Dicho Artículo establece lo que a continuación citamos:

"Acciones que prescriben a los cinco años:

Por el transcurso de cinco (5) años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:

1. La de pagar pensiones alimenticias.

2. La de satisfacer el precio de los arriendos, sean éstos defíneos rústicas o defíneos urbanas.

3. La de cualesquiera otros pagos que deban hacerse por años o en plazos más breves."

Analiza el apelante que la deuda estipulada en el contrato estaba siendo pagada a razón de cien ($100) dólares semanales, pago que hacía la Borínquen Dairy directamente al señor Torres. Siendo ello así y habiéndose estipulado una fecha cierta en el contrato, el tiempo transcurrido desde que se dejó de pagar excede por mucho los cinco (5) años que dispone el Art. 1866, supra, por lo cual la acción estaba prescrita.
Para que proceda la prescripción quinquenal contemplada por la disposición transcrita, hay que tener presente que dicha prescripción es aplicable sólo por el tiempo en que la obligación fuese pagadera en plazos no mayores de un año. Al convertirse en exigible la totalidad de la deuda, la obligación queda sujeta a la prescripción ordinaria. Asociación de Empleados ELA v. Guillén. En este mismo caso, nuestro Tribunal Supremo estableció que ante un préstamo de dinero en que el deudor incumple el pago, el acreedor puede exigir el balance adeudado del préstamo sin sujeción al plazo quinquenal, más los intereses correspondientes a los cinco (5) años precedentes a la presentación de la demanda pues a éstos les aplica el plazo quinquenal. El caso es claro al resolver que la acción para cobrar el principal adeudado por préstamo, aunque su pago se haya dividido en plazos no mayores de un año, no está sujeta a la prescripción quinquenal.
En el caso de autos, la deuda reconocida en el contrato fue de diecisiete mil quinientos setenta y cinco dólares con setenta y tres centavos ($17,575.73). La parte apelante convino en pagar la suma de cien ($100) dólares semanales a los apelados hasta que la deuda fuera saldada en su totalidad, de aquella cantidad que era acreedor ante Borínquen Dairy por concepto de la venta de leche, que dentro de la relación de negocios regular y ordinaria, le estaba haciendo a esa pasteurizadora de su negocio de vaquería. Tales plazos a realizarse por el apelante hasta saldar la deuda, ciertamente habrían de tomarle más de un año. Borínquen Dairy pagó a la parte apelada la suma de cinco mil cuatrocientos ($5,400) dólares, quedando un balance pendiente de pago por la suma de doce mil ciento setenta y cinco dólares con setenta y tres centavos ($12,175.73). Esta totalidad se convirtió, sin lugar a dudas, en una deuda líquida y exigible al cesar el pago, por lo que la obligación de pagar de los apelantes quedó sujeta a la prescripción ordinaria, según las disposiciones legales y la jurisprudencia aplicable sobre la materia que hemos analizado. El recurso es uno absolutamente frívolo, que amerita la imposición de sanciones.
III
Por los fundamentos que anteceden, se confirma la sentencia apelada y se impone a la parte apelante una sanción de quinientos ($500) dólares, la cual deberá ser depositada en la Secretaría del Tribunal de Primera Instancia, Subsección de Distrito, Sala de Lares, bajo el caso CD-95-243, en el plazo de diez (10) días, a partir de la notificación de esta sentencia. Dicha parte, deberá enviar evidencia del pago a este Tribunal dentro de un término de quince (15) días, contados también a partir de la notificación de esta sentencia.
*772 Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 22
1. Entre otras cosas, el Tribunal de Primera Instancia no hizo conclusión alguna respecto a que no existía razón para posponer el dictar sentencia sobre la acción contenida en la demanda de autos hasta la resolución de todas las acciones incoadas, incluyendo la reconvención. Regla 43.5 dejas de Procedimiento Civil, 32 L.P.R.A., R. 43.5, Ap. III. Resolvimos que lo que procedía era un certiorari, pero que el período para presentar este recurso era de treinta (30) días. No habiendo sido interrumpido dicho término por la solicitud de determinaciones de hechos adicionales, concluyó el mismo por haber transcurrido cuarentiún (41) días después de haber sido notificado el dictamen del tribunal de instancia.
2. Apéndice del recurso, Exhibit VII, pág. 19.
3. Id., Exhibit VIII, pág. 20.
4. No contamos con una exposición narrativa de la prueba que refleje el contenido de tal testimonio.
5. 32 L.P.R.A. Ap. III, R. 16.
6. 114 D.P.R. 601 (1983).
7. 31 L.P.R.A. Secs. 5241, 5291 y 5296, respectivamente.
8.119 D.P.R. 550 (1987).
9. 895 F. 2d. 38 (1990).
10. 116 D.P.R. 425(1985).